## KIMBALL et al. v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. January 24, 1921. Rehearing Denied April 5, 1921.)

### No. 5174.

**Carriers ⟺196—Finding as to classification of shipment sustained.**

In an action by a railroad company to recover freight on a shipment of granite, the question in issue being whether it should be classified as "monuments—granite, * * *" or at a lesser rate as " * * * granite * * * blocks, slabs or pieces," a finding by the court, to which the case was tried by stipulation, that the shipment should be classified as monuments, *held* sustained by the evidence, where it was billed as monuments, and defendant admitted that it was "in some stage of preparation for monuments," and in the absence of any evidence as to what work had been done on the stone or what remained to be done to complete the monuments.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by the Chicago, Rock Island & Pacific Railway Company against Fred L. Kimball and others, partners as Kimball Bros. Judgment for plaintiff, and defendants bring error. Affirmed.

James A. Brown and Thomas F. A. Williams, both of Lincoln, Neb. (Lionel C. Burr, of Lincoln, Neb., on the brief), for plaintiffs in error.

E. P. Holmes, of Lincoln, Neb. (J. Lloyd McMaster, of Lincoln, Neb., on the brief), for defendant in error.

Before CARLAND and STONE, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is an action at law brought by the Chicago, Rock Island & Pacific Railway Company against the defendant, to recover a balance claimed to be due the plaintiff upon shipments

of granite monuments and dressed granite from the state of Vermont to Lincoln, Neb. At the conclusion of all the evidence motions for a directed verdict were made by both parties. Thereupon, by consent of both parties, the jury was excused and the case submitted to the court. The court directed judgment in favor of the railroad company, to review which defendants sued out the present writ of error.

The case turns upon whether the property shipped belongs in the fifth class, which carries a rate of 51 cents, or in the sixth class, which carries a rate of 41 cents. The schedules filed with the Interstate Commerce Commission describe the material falling within the fifth class as follows:

"Monuments—granite, marble or stone, artificial or natural, and parts thereof."

Material falling in the sixth class is described as follows:

"Marble, granite, jasper, onyx and stone, N. O. S., artificial or natural, blocks, slabs or pieces, polished, crated or boxed, carload, rough quarried, sawed, hammered, chiseled or dressed, not polished."

The language of the two classes is dark. It should have been explained by evidence showing accurately the condition of the granite and marble embraced in the shipments, and also differences between granite intended for building purposes and granite intended to be used in monuments. There should also have been evidence showing clearly the customs existing between the large manufacturers in the East, and the local monument firm as to preparing materials, either for standardizing monuments, or for parts of monuments more individual in their character. As to all these subjects there is no evidence, but the briefs are filled with references to them, apparently oblivious of the fact that we cannot take judicial notice of them. The answer is evasive. It contains this language:

"That some of the granite comes in the rough, some dressed or hammered or axed, and some partly polished, and the defendants allege and show that all said granite was material for use by defendants in the manufacture of tombstones, monuments, markers, or other memorials, and none of said material was *completely* finished for delivery to defendant's customers, but all of the same required work and labor thereon in defendant's said manufactory before it was finished and ready for sale to defendant's customers."

How nearly was this material completed? How much work had to be done upon it? Was it all ready to be placed in the cemetery, with the exception of the chiseling of the name of the deceased, and the date of death, or some other such slight work?

It is further admitted in the answer that all the bills of lading accompanying the shipments here involved described the material as "monuments."

The only evidence offered by plaintiff was the official classification from which we have already made the quotations.

It was then admitted that the rate on class 5 was 51 cents, and on class 6, 41 cents. The pleadings showed that defendants had paid at the lower rate, and the action was brought to recover the difference between 41 cents and 51 cents.

Upon the foregoing evidence and admission plaintiff rested. Both parties then moved the court for a directed verdict. The court then made the following statement:

"If the defendants will agree to it, I will permit a juror to be withdrawn at this time and wait for a brief to be filed; *upon the admission that all this granite was in some stage of preparation for monuments.*"

The bill of exceptions then proceeds as follows:

"The defendants, in line with the suggestion of the court, ask leave at this time to withdraw a juror, and that the case be continued to be taken up at the earliest possible convenience of the court."

This is an acceptance of the admission stated by the court. The court then said:

"The jury is excused, because both sides have asked the court to enter judgment, and I will excuse the jury and take the matter under advisement."

Thereafter the court made a general finding in favor of the plaintiff and entered judgment accordingly.

This record leaves the case in a mere welter of dialectics. None of the facts necessary for its intelligent decision have been shown. The power to produce proof as to the actual quality of the shipments was with the defendants rather than the plaintiff. It may be assumed that the wholesaler would so far co-operate with his customer as to make it difficult for the carrier to show the exact character of the granite.

We think the admission of the answer and the admission at the conclusion of the case which we have italicized, taken with the fact that the bills of lading classified all the shipments as monuments, makes out sufficient evidence to support the judgment. The burden in this court of showing that the judgment is erroneous, is upon the plaintiffs in error, and they have failed to meet that burden. We say this having clearly in mind the rule that a carrier cannot make a different rate for precisely the same article based solely upon the use to which the article is devoted. I. C. C. v. B. & O. R. R. Co., 225 U. S. 326, 32 Sup. Ct. 742, 56 L. Ed. 1107, Ann. Cas. 1914A, 504. It is contended by defendants that granite in various stages of finishing is regularly shipped, when used for building purposes, at 41 cents, and it is then insisted that the granite shipped to defendants does not greatly vary from the granite shipped to the building trade. The trouble with defendants' case is that there is no evidence here to guide us in passing upon any such question.

The judgment is
Affirmed.

STONE, Circuit Judge, dissents.